# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MICHELLE DENISE RUSSELL,**

      **Plaintiff,**

v.                                                 Case No: 6:17-cv-810-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Michelle Denise Russell (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits and supplemental security income. Doc. 1; R. 1-6, 211-20. Claimant argued, in part, that the Administrative Law Judge (the ALJ) erred by failing to properly weigh the opinion of A. Joshua Appel, M.D. (Dr. Appel). Doc. 23 at 24-27. For the reasons set forth below, the Commissioner's final decision is **REVERSED** and **REMANDED**.

## I. THE ALJ'S DECISION

In 2013, Claimant filed applications for disability insurance benefits and supplemental security income. R. 16, 211-20. Claimant alleged a disability onset date of January 1, 2011. *Id.*

The ALJ issued his decision on March 10, 2016. R. 16-32. In his decision, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral knees, generalized arthritis, obesity, status-post hernia repair. R. 18-19. The ALJ found that Claimant had an RFC to perform less than a full

range of sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a).[1] R. 20. Specifically, the ALJ found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant has the residual functional capacity to lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently. She can sit without limit and stand and/or walk for a total of 2 hours out of an 8-hour workday. The claimant must alternate positions as follows. She must alternate to standing for 5 minutes, after every 30 minutes of sitting. She must alternate to sitting for 5 minutes, after every 30 minutes of standing. She must alternate to sitting for 5 minutes after every 30 minutes of walking. She can use foot controls frequent with the bilateral lower extremities. She can use hand controls frequently with the right upper extremity. She can reach in all directions, including overhead, frequently with the bilateral upper extremities. She can handle frequently with the right upper extremity. She can occasionally perform climbing of ramps and stairs, but never climbing of ladders, ropes and scaffolds. She can occasionally balance. She can occasionally perform stooping, kneeling, crouching and crawling. She is limited to occasional exposure to extreme cold, extreme heat, and vibration. She should avoid all exposure to hazards such as unprotected heights or moving machinery.

*Id.* The ALJ posed a hypothetical question to the VE that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing jobs in the national economy. R. 74-77. The ALJ thus found that Claimant was capable of performing jobs that existed in significant numbers in the national economy. R. 31-32. Therefore, the ALJ found that Claimant was not disabled between the alleged onset date and the date of the ALJ's decision. *Id.*

## II. STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'" *Winschel v.*

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a).

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. ANALYSIS

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. §§

404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit stated that: "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Id*. at 1178-79 (quoting 20 C.F.R. § 404.1527(a)(2)) (alterations in original). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id*. (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent

with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Here, Claimant argued, in part, that the ALJ erred by failing to properly weigh the opinion of Dr. Appel, Claimant's treating orthopedic surgeon. Doc. 23 at 24-27. Specifically, Claimant argued that the ALJ erred by giving Dr. Appel's opinion little weight on the grounds that "the examination records do not support the extreme limitations given in" Dr. Appel's opinion. *Id*. In response, the Commissioner argued that the reason provided by the ALJ is supported by substantial evidence. *Id*. at 27-32.

On September 16, 2016, Dr. Appel completed a "Physical Medical Source Statement" wherein Dr. Appel opined, in part, as follows: Claimant is unable to sit, stand, or walk for more than two hours in an eight hour work day; Claimant must take two hour breaks every thirty minutes; Claimant must use a cane; Claimant must never lift more than ten pounds and can lift less than ten pounds rarely; Claimant must never stoop, crouch, or climb stairs; Claimant is incapable of low stress work; and Claimant will be absent from work more than four days per month. R. 933-936.

In his decision, ALJ stated as follows with respect to Dr. Appel:

On May 12, 2014, A. Joshua Appel, M.D. an orthopedic surgeon at Sea Spine Orthopedic Institute saw the claimant. She reported that she was involved in a motor vehicle accident. She complained of left knee pain, right knee pain, and low back pain. On physical exam, the claimant's blood pressure was 107/68 and her weight was 215 pounds at five feet six inches tall. She was alert and oriented times three. Her affect was blunted. Her gait was antalgic and she had difficulty on her left leg. She was wearing a neoprene brace now. She was tender to palpation over the left knee, and had a positive flexion pinch. She was limited about 5-10 degrees in full flexion in the left knee. She was stable to both varus and valgus stress, but with pain. Her anterior and posterior drawer was hard to assess secondary to

guarding. Lachman appeared to be intact, but there was guarding. On the
contralateral side, she was tender to palpation over the medial joint line on the right
knee, but stable to both varus and valgus stress, and negative flexion pinch. At C5-
Tl, motor and sensory appeared to be intact, reflexes were symmetrical, and no
clonus was noted. There was no sign of cubital tunnel, carpal tunnel, or shoulder
impingement. Her hips had good range of motion and no edema was noted.

An MRI of the right knee revealed meniscal abnormality with atrophy, small joint
effusion, Baker cyst, and presumed intraosseous ganglion in the femoral
metaphysis area. An MRI of the cervical spine demonstrated loss of cervical
lordosis and disc bulging at multiple levels, C3 through C7. An MRI of the lumbar
spine revealed diffuse red marrow hyperplasia, facet arthropathy at L4-L5 with
posterior disc herniation, and L5-Sl posterior disc herniation as well as facet
arthropathy. An MRI of the left knee dated February 10, 2014 revealed subarticular
marrow edema in the anterior aspect of the medial femoral condyle, lateralization
of the tibial insertion at the patellar tendon, and knee effusion. Dr. Appel provided
impressions of internal derangement of bilateral knees and lumbar strain/sprain as
well as disc herniation in the cervical spine by report, and cervical strain/sprain. Dr.
Appel opined that the claimant would benefit from therapeutic regimens with Dr.
Fadem. Dr. Appel also recommended an injection for the left knee as that was her
biggest issue. (Exhibit C24F).

In a Physical Medical Source Statement, dated September 16, 2014, Dr. Appel
opined that the claimant's bilateral knee pain and low back pain causes functional
limitations of less than sedentary. Dr. Appel gave limitations that would preclude
the claimant from full-time work. Dr. Appel further opined that the claimant would
be able to perform less than two hours of sitting, standing and walking per day,
would need extra breaks and to elevate her legs, and would be incapable of even
low stress. Dr. Appeal further opined that the claimant would likely be absent more
than four days per month (Exhibit C28F).

. . .

I have assigned little weight to Dr. Appel's Physical Medical Source Statement
(Exhibit C28F). The claimant's musculoskeletal problems are adequately addressed
in the residual functional capacity assessment, and the examination records do not
support the extreme limitations given in this opinion.

R. 27-28, 30. The ALJ provided no further explanation as to how Dr. Appel's opinions were

purportedly inconsistent with the "examination records."

The Court notes at the outset that the ALJ's use of the term "examination records" is

ambiguous; it is not clear if the ALJ was referring to Dr. Appel's examination records or the entire

universe of examination records in this case. But the Court finds that the ALJ must have been referring to Dr. Appel's examination records. Indeed, the reference to "examination records" was made in relation to Dr. Appel, and no other medical source examination was identified by the ALJ or cited in relation to the reference to "examination records." Further, the Court notes that although the Commissioner in her response compared Dr. Appel's opinion with two other opinions in the record, the Commissioner primarily discussed Dr. Appel's examination findings when attempting to support the ALJ's decision, and the Commissioner failed to argue that the ALJ in the decision concluded that Dr. Appel's opinion was inconsistent with anything other than Dr. Appel's own examination records.

That said, upon review, the Court finds that the reason given by the ALJ for providing little weight to Dr. Appel's opinion is insufficient and conclusory. After reviewing both the ALJ's summary of Dr. Appel's records and the records themselves, which are largely consistent with the ALJ's summary, the Court cannot determine in what way the ALJ believed the records are inconsistent with Dr. Appel's opinion.[2] R. 27-28, 884-86, 931-36, 950-51, 963-65.[3] Nor is it obvious to the Court that Dr. Appel's examination records are somehow inconsistent with Dr. Appel's opinion. Further frustrating the Court's review of the ALJ's determination is the ALJ's vague characterization of the allegedly inconsistent limitations as "extreme limitations." In effect, the Court can determine neither the limitations that the ALJ deemed to be inconsistent with Dr.

---

[2] The vague nature of the ALJ's reasoning is further exemplified by the ALJ's ambiguous reference to "examination records" without context or citations. Even if the Court construed the term "examination records" as including any examination record by any medical source contained within the record evidence, that would not alter the Court's ultimate determination. Indeed, such a construction would render the ALJ's decision even more conclusory and vague.

[3] In an abundance of caution, the Court considered all the records from Sea Spine Orthopedic Institute even if Dr. Appel was not the treating doctor on a particular visit. *See* 950-51, 964-65.

Appel's opinion nor the examination records with which those limitations are allegedly inconsistent. In addition, to the extent that the Commissioner attempts to provide justifications supporting the ALJ's decision, the Court will not rely on the Commissioner's post-hoc arguments. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). To do so would necessarily require the undersigned to reweigh the evidence, which the undersigned declines to do. *See Phillips*, 357 F.3d at 1240 n.8 (11th Cir. 2004) (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'") (quotation omitted).

Accordingly, because the ALJ failed to demonstrate good cause for giving Dr. Appel's opinion less than substantial weight, Claimant's argument is well-taken. This issue is dispositive and therefore there is no need to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors).

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and against the Commissioner, and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 29, 2018.

_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Eric S. Fulcher
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Drive
Suite 300
Orlando, Florida 32817-9801